UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD LEE HODGEMIRE, JR.,

    Plaintiff,

v.                                                                            Case No. 1:16-cv-1413
                                                                         Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplement security income (SSI).

Plaintiff alleged a disability onset date of July 1, 2008, which he later amended to November 10, 2010. PageID.309. Plaintiff identified his disabling conditions as: personality disorder; anxiety attacks; severe depression; a form of schizophrenia; problems sleeping; "meltdowns;" fear of rejection; "don't adjust well to new things;" headaches; acid reflux; and "anger problems." PageID.314. Prior to applying for DIB and SSI, plaintiff completed the 11th grade, with past employment as a CNC operator at an aluminum factory, general laborer, and home care giver. PageID.315-316. The vocational expert (VE) identified plaintiff's past relevant work as a cut-off saw tender (unskilled, medium work) and automatic nailing-machine operator (semi-skilled medium job). PageID.64. Administrative law judge (ALJ) Howard Kauffman reviewed

1

plaintiff's claim *de novo* and entered a written decision denying benefits on December 29, 2015. PageID.51-65.

ALJ Kauffman noted that plaintiff's June 2009 application for disability was denied in an unfavorable ALJ decision on November 9, 2010. PageID.52. However, ALJ Kauffman determined that he was not bound by the prior decision because there was new and material evidence showing a change in the claimant's medical condition and circumstances. PageID.51-52. Accordingly, ALJ Kauffman's December 29, 2015 decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

I. **LEGAL STANDARD**

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in

2

the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional

capacity (determined at step four) and vocational profile." *Id*. If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, ALJ Kauffman found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 10, 2010. PageID.54. In this regard, the ALJ found that, "[a]lthough the claimant worked after the amended alleged disability onset date, this work activity did not rise to the level of substantial gainful activity." *Id*. The ALJ also found that plaintiff:

> [M]et the insured status requirements of the Social Security Act from his amended alleged onset date through June 30, 2012. He did not meet the insured status requirements of the Social Security Act from July 1, 2012 through March 30, 2013, although it appears he may have again met the insured status requirements of the Social Security Act from April 1, 2013 through September 30, 2014."

*Id*. At the second step, the ALJ found that plaintiff had severe impairments of affective disorders and anxiety related disorders. PageID.55. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.*

The ALJ decided at the fourth step that:

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. The claimant

4

can perform simple, routine and repetitive tasks; can have only brief and superficial contact with the general public and co-workers; can occasionally interact with supervisors; and can only make simple, work-related decisions. He requires a work position that requires no more than occasional, simple work place changes; and cannot work at a production rate pace or meet strict quota requirements, but can meet end-of-day goals.

PageID.57. The ALJ also found that plaintiff is unable to perform any past relevant work. PageID.64.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the medium exertional level in the national economy. PageID.42-43. Specifically, the ALJ found that plaintiff could perform the requirements of medium and unskilled occupations in the national economy such as industrial cleaner (168,000 jobs), kitchen helper (290,000 jobs), and store laborer (185,000 jobs). PageID.64-65. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from November 10, 2010 (the amended onset date) through December 29, 2015 (the date of the decision). PageID.65.

### III. DISCUSSION

Plaintiff set forth on issue on appeal (with several sub-issues):

**The ALJ's residual functional capacity (RFC) findings are not supported by substantial evidence as required under 20 C.F.R. §§ 405.1520; 416.920 and §§404.1545; 416.945, and SSR 98-6pA.**

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).

**1. The ALJ failed to properly analyze the opinions of K. R. Tatineni, M.D.**

Plaintiff contends that the ALJ did not properly evaluate the opinions of his psychiatrist, Dr. Tatineni, who treated him for about 18 months prior to completing a mental residual functional capacity (RFC) form (Exh. B10F) and narrative statement (Exh. B11F) in August and September 2015, respectively. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§

404.1527(c)(2) and 416.927(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ provided the following summary of plaintiff's initial treatment with the doctor in 2014:

> When the claimant underwent an initial evaluation with psychiatrist, K. R. Tatineni, M.D., in January 2014, the claimant reported depression, agitation and anger. Although the claimant reported significant negative thinking, pessimism, restlessness, sadness, worry, impaired sleep, paranoia, and irritability, he also admitted that he had not been compliant with medications. During the evaluation, the claimant appeared disheveled, and demonstrated significant symptoms, including concrete judgment and limited insight. The claimant was started back on medications, and advised to return for follow up in a month (Exhibit B7F).
>
> At about the same time as the initial evaluation by Dr. Tatineni, the claimant also underwent an annual assessment in January 2014, where he reported numerous significant mental symptoms. He stated that he earned money from the State of Michigan for "taking care of his disabled mother" (Exhibit B8F/2). While he denied alcohol use, he admitted that he occasionally used marijuana. Even though he said he had issues being around people, he said he got along with friends, neighbors, coworkers and peers. He also stated that he attended/participated in sports events, participated in recreational games with others, and would go to see movies (Exhibits B8F; B9F).
>
> In subsequent therapy sessions, while the claimant repo1ted having a "bad day" when people look at him, harass him and stare at him, he said he had a good day when people leave him alone. He recounted an experience when people looked at him for wearing slippers, and how it bothered him all that day. During therapy, the claimant was advised of coping skills to deal with that particular circumstance, as well as other coping skills (Exhibit B9F).

PageID.59.

The ALJ addressed Dr. Tatineni's opinions as follows:

> In Medical Source Statements dated August and September 2015, Dr. Tatineni assessed the claimant with moderate to marked limitations in his ability to

7

perform activities of daily living; and marked difficulties in his ability to maintain social functioning, and maintain concentration, persistence or pace; with no episodes of decompensation. Dr. Tatineni further assessed the claimant with serious limitations to an inability to meet competitive standards in areas including the ability to maintain attention for two hour segments; work in coordination with or proximity to others without being unduly distracted; perform at a consistent pace; get along with coworkers or peers; respond appropriately to changes in a routine work setting; and deal with normal work stress. Dr. Tatineni clarified that the claimant had a thought disorder, with manifestations of paranoia, hallucinations, and mania, among other things. However, while it is true that progress notes document episodes of hallucinations, they appear intermittent and related to his medications. For example, in April 2015, the claimant reported hallucinations, depression, and excessive worry about his disability hearing. His medications were modified, and at his therapy session on April 30, 2015, the claimant's girlfriend said the claimant had smiled and laughed during the week. Further, at a medication review performed on May 6, 2015, the claimant said he had been medication compliant and was doing well, and having no problems, including no hallucinations. Moreover, at an office visit performed on May 21, 2015, it was noted that despite a modification in the claimant's diagnosis, the claimant was able to do well, with no anger; and while some positive and negative symptoms remained, they were lessened. As well, no medication side effects were indicated, and the claimant's medications were renewed. Due to inconsistencies between the doctor's assessment and the objective medical evidence, little weight has been given Dr. Tatineni's opinion (Exhibits Bl0F; B11F; Social Security Ruling 96-2p ).

PageID.62.

Dr. Tatineni also provided a sworn statement to explain his opinions. The doctor has diagnosed plaintiff with Bi-Polar Mood Disorder mixed, Schizoaffective Disorder, and Generalized Anxiety Disorder. PageID.718. Plaintiff has manifestations of paranoia where "[h]e thinks that people are talking to him, and then also following him sometimes." *Id*. The doctor stated that plaintiff expresses auditory hallucinations, has mania, and negative symptoms (depression). *Id*. Plaintiff appears at appointments with his mother (with whom he lives) and girlfriend. *Id*. Plaintiff's mother reports that she has to assist him in activities, and guide him in areas like hygiene (she has to remind him to take a shower), daily activities and daily needs. *Id*. at PageID.718-719.

8

Dr. Tatineni confirmed that the mother's reports are consistent with his examinations of plaintiff:

> I have observed him disheveled and unshowered. He does not dress appropriately sometimes. Sometimes he has an odor. It is obvious. He also believes that people are staring at him.

*Id*. at PageID.719. The doctor noted that on some occasions, plaintiff "appears to be a little more functional and I would say he is moderately impaired" while at other times, "I don't see any kind of positive functioning and, therefore, during those times he is marked [i.e., markedly limited in activities of daily living]." *Id*. Dr. Tatineni felt that plaintiff was markedly limited in social functioning, "because of the very nature of his paranoia, thinking that people are controlling him, talking to him and always staring at him, he is just unable to function socially in any meaningful way." *Id*.

With respect to his conclusion that plaintiff had marked difficulties in concentration, persistence and pace, the doctor explained:

> When I try to talk to him he does not seem to be able to listen, sometimes he does not attend to the question at all; other times he gets tangential. His mother often has to prompt him. She will say to him, "are you listening to the doctor, are you listening to the doctor?", and then he gets mad and hostile sometimes. But he has to be prompted. He just can't focus on anything for longer than a few seconds.

PageID.719.

Upon review of the record, the Court concludes that the ALJ did not articulate good reasons for not giving controlling weight to Dr. Tatineni's opinions. The thrust of the ALJ's evaluation appears to be that plaintiff's severe mental impairments arise when plaintiff fails to take his medicine. Dr. Tatineni acknowledged that plaintiff's abilities fluctuated, e.g., sometimes he was only moderately limited in his ability to perform activities of daily living. However, the doctor did not attribute plaintiff's fluctuations to lack of medication. The doctor's opinions regarding the

9

marked limitations caused by plaintiff's paranoia (making him "unable to function socially in any meaningful way" and his inability to "focus on anything for longer than a few seconds") are supported by the doctor's testimony of his interaction with plaintiff and the medical record cited in plaintiff's brief. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate the weight assigned to Dr. Tatineni's opinions and, if appropriate, re-evaluate whether the non-exertional restrictions in the RFC accurately reflect plaintiff's abilities.

### 2. The ALJ did not give proper weight to the opinion of plaintiff's treating therapist, Colleen McManus, MA, LLP.

Next, plaintiff contends that the ALJ failed to give proper weight to Ms. McManus' opinions expressed in a Mental RFC form. PageID.721-723. The ALJ addressed those opinions as follows:

> In a Medical Source Statement dated November 2015, Colleen McManus MA, LLP, the claimant's treating therapist, assessed the claimant with serious limitations to an inability to meet competitive standards in such areas as the ability to maintain attention for two hour segments; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; perform at a consistent pace; get along with co-workers or peers; respond appropriately to changes in a routine work setting; and deal with normal work stress; with marked limitations in his ability to perform activities of daily living, maintain social functioning, and maintain concentration, persistence or pace (Exhibit B12F; Social Security Ruling 06-03p). However, the undersigned notes that these limitations are not supported in Ms. McManus' own treatment records. Although Ms. McManus noted such things as the claimant's intermittent remarkable mood/affect and medication side effects; at the same time, Ms. McManus consistently assessed the claimant with unremarkable thought processes, behavior, and functioning. Because it is not consistent with the objective evidence, including her own treatment records, little weight has also been given to Ms. McManus' assessment.

PageID.62-63.

It appears to the Court that the ALJ has mischaracterized Ms. McManus' status. One of the stated purposes of SSR 06-03p is "[t]o clarify how we consider opinions from sources

who are not "acceptable medical sources." By citing SSR 06-03p, it appears that the ALJ treated Ms. McManus as an "other source," i.e., a medical source who is not an acceptable medical source. *See* 20 C.F.R. §§ 404.913(a) and 416.1513(a) ("[w]e need evidence from acceptable medical sources to establish whether you have a medically determinable impairment[ ]"; such sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists). This Court has previously concluded that a limited license psychologist such as Ms. McManus is an acceptable medical source under the regulations. *See Molina v. Commissioner of Social Security*, No. 1:14-cv-648, 2015 WL 5097553 at *7 (W.D. Mich. Aug. 28, 2015) (listing cases). However, based on this record, the ALJ did not properly evaluate Ms. McManus' opinions as those expressed by an acceptable medical source. Accordingly, this matter will be reversed and remanded pursuant to 42 U.S.C. § 405(g). On remand, the ALJ should evaluate her opinions as those of an acceptable medical source.

> **3. The ALJ committed an error of law when he found that the DDS consultant's findings of limitations relating to plaintiff's ability to perform work activity were well supported, but he failed to include those limitations in his hypothetical or to explain why he rejected those portions of the consultants' opinions.**

Plaintiff contends that the ALJ's RFC determination does not have any allowance for time that plaintiff would be off-task or miss work, even though the non-examining DDS consultants, psychologist William Schirado, Ph.D., and psychiatrist Ruqiya Tareen, M.D., both found that plaintiff would have moderate limitations in his ability to perform at a consistent pace, in maintaining attention and concentration for extended periods, and in completing a normal workday and workweek without interruptions from psychologically based symptoms. Plaintiff's Brief (ECF No. 10, PageID.752), citing PageID.173, 197, 210. Plaintiff also points out that Dr. Tatineni addressed the issue, i.e., finding that plaintiff was unable to meet competitive standards

11

in his ability to "complete a normal workday and workweek without interruption from psychologically based symptoms." PageID.715. Given this record, the Commissioner should address this issue on remand when re-evaluating Dr. Tatineni's opinion.

## IV. CONCLUSION

For these reasons, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate the weight assigned to the opinions of Dr. Tatineni and Ms. McManus, and whether the non-exertional restrictions in the RFC accurately reflect plaintiff's abilities. A judgment consistent with this opinion will be issued forthwith.

Dated: March 28, 2018 /s/ Ray Kent
United States Magistrate Judge